IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY RAY WILSON, #217101, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-CV-792-TMH |
| | ) | [WO] |
| | ) | |
| CHARLES THOMAS WEED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Johnny Ray Wilson ["Wilson"] challenges actions which allegedly occurred during his confinement in the Crenshaw County Detention Facility from May of 2010 until April of 2011.  Wilson names Charles Thomas Weed, a fellow inmate; Charles West, the Sheriff of Crenshaw County, Alabam;, Jimmy Lecroy, a deputy sheriff; and Ronnie White, an investigator for the sheriff's department; as defendants in this cause of action.  In the complaint, as amended, Wilson alleges that on four separate occasions defendants Weed and White assaulted him and asserts that the assaults resulted from a conspiracy among the defendants. Wilson seeks a declaratory judgment, injunctive relief and monetary damages from the defendants.

The defendants filed answers, a special report, supplemental special report and supporting evidentiary materials addressing Wilson's claims for relief.  In these documents,

the defendants adamantly deny they acted in violation of Wilson's constitutional rights. Additionally, the defendants assert that this case is due to be dismissed because Wilson failed to exhaust an administrative remedy available to him at the Crenshaw County Detention Facility with respect to the claims presented in this cause of action. The defendants base their exhaustion defense on the plaintiff's failure to lodge a formal grievance regarding the claims presently pending before this court.

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the county defendants' reports, including an affidavit from defendant Weed, as a motion for summary judgment. *Order of January 5, 2012 - Doc. No. 23*; *Order of February 22, 2012 - Doc. No. 35*; *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."). Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment with respect to the exhaustion defense is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact regarding the plaintiff's failure to exhaust his administrative remedies.  Thus, the burden shifts to the plaintiff to establish, with

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Wilson is required to produce "sufficient [favorable] evidence" which would be admissible at trial demonstrating the proper exhaustion of previously available administrative remedies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be

granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment.");  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants);  *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....");  *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.");  *Barnes v. Southwest Forest*

5

*Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary

6

judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Wilson fails to demonstrate a requisite genuine dispute of material fact regarding his failure to exhaust administrative remedies so as to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

On January 11, 2010, law enforcement personnel placed Wilson in the Crenshaw County Jail due to his arrest on several criminal charges, including controlled substance offenses, burglary, theft of property and possession of a concealed weapon. In November of 2010, inmate Weed was transferred from the custody of the Alabama Department of

Corrections to the Crenshaw County Detention Facility at the request of Sheriff West. *Defendants' Exhibit 6 to the February 21, 2012 Supplemental Special Report (Supplemental Affidavit of Sheriff Charles West) - Doc. No. 34-6* at 1-2 ("In 2010, I requested that Tommy Weed be transferred from DOC custody to the Crenshaw County Jail so that he could serve as a trusty in the jail....  I was familiar with Tommy Weed and felt that he would be well suited to the trusty position and would be able to help the Sheriff's Office by performing tasks such as cooking, cleaning, and maintenance work....  Inmate Weed has plumbing and carpentry skills and his duties have included cooking, plumbing and other maintenance work....  I did not request that Tommy Weed be transferred to intimidate or threaten the Plaintiff [and did not know of their perceived connection at the time of Weed's transfer to the jail].  My request for Inmate Weed to be placed in the Crenshaw County Detention Facility was based solely on the Sheriff's Office's need for a competent trusty that could cook and perform maintenance tasks.").

Wilson asserts that upon learning of Weed's transfer from state prison to the Crenshaw County Detention Facility he communicated to jail personnel, both verbally and via written correspondence, that he felt unsafe being housed in the same facility as Weed because Weed was involved in the murder of his father.  In support of this assertion, Wilson maintains that when he became aware of Weed's confinement in the jail, he submitted written correspondence addressed to "Charles West or Jimmy Lecroy" stating that he would not "go to Court [on his upcoming court date] without a bulletproof vest"

because he was "afraid for [his] life outside [the detention facility's] doors.  Me or Tommy [Weed] has got to go.  I'm sure you and your staff have your lies & threats in order, so I will tell the judge about Tommy Weed and our relationship."  *Defendants' Exhibit G to the December 22, 2011 Special Report - Doc. No. 19-13* at 5-6.  The record also demonstrates that Weed made verbal statements to jail staff with respect to his fear of Weed.  In response to these communications, Sheriff West noted that Weed as a jail trusty was "housed in the front of the jail, in the administrative section" of the facility,  an area separate from "the containment/housing area in the back of the jail" where Wilson was confined.  *Defendants' Exhibit 5 to the December 22, 2011 Special Report (Affidavit of Sheriff Charles West) - Doc. No. 19-5* at 2.  Sheriff West further "ordered that Weed's trusty duties would be limited to the administrative portion of the jail and that [Weed], at no time, would be allowed into the holding portion of the jail, where Plaintiff was housed.  Plaintiff was made aware that Weed would not be allowed into the housing portion of the jail and his trusty duties would not encompass tasks in the housing portion of the jail."  *Id*.

Wilson alleges that during his confinement in the jail defendants Weed and White assaulted him on four separate occasions.  *Complaint - Doc. No. 1* at 2-3; *Amendment to the Complaint - Doc. No. 29* at 1-6.[2]  He maintains that these assaults occurred due to a continuing conspiracy between the defendants.  *Complaint - Doc. No. 1* at 2-3.  Wilson also

---

[2]Wilson alleges that the four assaults occurred "[o]n or about November 23, 2010 to December 15, 2010, ... [o]n or about January 6 to January 20, 2011 ... [o]n or about February 20 - February 28, 2011 ... and [o]n or about March 25 - April 10, 2011."  *Amendment to the Complaint - Doc. No. 29* at 2-4.

complains that the county defendants acted with deliberate indifference to his safety in failing to protect him from these assaults. *Amendment to the Complaint - Doc. No. 29* at 7-9.

The evidentiary materials submitted by the parties establish that Wilson submitted one grievance to the jail administrator in which he made general allegations regarding "assaults and threats" by Weed," feeling "intimidated by [Weed] and afraid for [his] life[,]" and challenging Sheriff West's denial of his request for "use of a bulletproof vest" during his court appearances. *Defendants' Exhibit G to the December 22, 2011 Special Report- - Doc. No. 19-13* at 7; *Plaintiff's Supplemental Response - Doc. No. 45* at 4 (same). This grievance is rambling, consists predominately of vague assertions and does not reference any assaults at the hands of Weed and White. Moreover, a thorough review of this grievance reveals that Wilson never mentions White. After review of this grievance, the jail administrator responded by advising Wilson "that Weed would not be entering the housing portion of the jail." *Defendants' Exhibit 2 to the December 22, 2011 Special Report (Affidavit of Jennifer McDougald) - Doc. No. 19-5* at 2. It is undisputed that Wilson took no further action regarding this grievance and failed to submit any written/formal grievance with respect to the alleged assaults committed against him by Weed and White, the actions which form the basis for this cause of action.[3]   The defendants therefore

---

[3]Wilson also contends that he informed "Nurse Sue" of the alleged assaults and sought medical treatment for his injuries. However, the undisputed evidentiary materials establish that no one by the name of "Sue" served as a nurse at the Crenshaw County Detention Facility during the time of the alleged assaults.

maintain that this case is subject to dismissal because Wilson failed to properly exhaust the administrative remedy provided at the Crenshaw County Detention Facility prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the

_____

In addition, both nurses employed at the facility during the period of time relevant to Wilson's complaint provided affidavits demonstrating that Wilson "never made any complaint ... regarding mistreatment or assault by Inmate Weed, Investigator Ronnie White ... or ... anyone else.... Plaintiff has never requested medical care for any injury which appeared to be the result of an assault. Except for any injuries Plaintiff already had when he was booked into the Crenshaw County Detention Facility, Plaintiff has never [during his multiple examinations by the medical staff] appeared to have been injured or assaulted. Plaintiff has shown no signs of having been punched, tased or in any other way assaulted." *Defendants' Exhibit 1 to the February 21, 2012 Supplemental Special Report (Affidavit of Sally Creel) - Doc. No. 34-1* at 1-2; *Defendants' Exhibit 2 to the February 21, 2012 Supplemental Special Report (Affidavit of Leah Hudson) - Doc. No. 34-2* at 1-2 (same).

exhaustion requirement.  *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***."  *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387 (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings....  Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S.Ct. at 2386-2387.  The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her.  548 U.S. at 83-84, 126 S.Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his

original complaint." *Smith v. Terry*, 491 F.Appx. 81, 83 (11[th]Cir. 2012) (per curiam).  The sole "important historical fact [is]:  his administrative remedies were unexhausted when he filed his original complaint" and where this fact exists the inmate "cannot cure the exhaustion defect."  *Id*.

The record in this case establishes that the Crenshaw County Detention Facility provides a grievance procedure for inmate complaints.  *Defendants' Exhibit H to the December 22, 2011 Special Report  - Doc. No. 19-14* at 2-3.  The grievance procedure is set forth in the inmate handbook, a procedure Wilson utilized during his confinement in the county facility.  The relevant portion of the grievance procedure reads as follows:

**A.  Grievance Procedure**
**1.      Informal/Oral Grievance**

The informal grievance procedure offers the inmate the opportunity to resolve his/her cause for complaint before resorting to the more time consuming formal procedure, which requires that all communication between the inmate and the facility be in written form.

Staff members receiving an inmate's oral grievance will attempt to resolve the issue informally.  If the grievance is beyond the scope of that employee's authority, he/she will notify the Officer In Charge.  The Officer In Charge may try to resolve the grievance or may have the inmate initiate a written grievance.  The inmate is free to bypass or terminate the informal grievance process, and proceed directly to the formal grievance stage....

**2.      Formal/Written Grievance**

The Officer In Charge must allow the inmate to submit a formal, written grievance.  The inmate may take this step because he/she is not satisfied with the outcome of the informal process.

The grievance procedures follow:

(1)  The Officer In Charge will provide the inmate a grievance form upon request.
(2)  Staff will advise the inmate that the grievance form can cover a single complaint, or a cluster of closely related issues.
(3)  The Officer In Charge will accept the grievance form signed and dated by the inmate.  If the inmate claims that the issue is sensitive or the inmate's safety or well being would be jeopardized if others in the facility learned of the grievance, the Officer In Charge will hold the grievance until it is turned over to the Facility Director.
(4)  No inmate may submit a grievance on another inmate's behalf.
(5)  At no time will an inmate be denied to vent his grievance to the Sheriff. The Sheriff will see the inmate as soon as possible.

When the Officer In Charge receives a formal grievance, he/she will officially meet with the inmate to attempt to resolve the issue.  If the grievance cannot be resolved to the satisfaction of the inmate, the grievance will be forwarded to the Facility Director.

If the inmate does not accept the Facility Director[']s solution the Sheriff will be contacted.

## B.  <u>Emergency Grievances</u>

An emergency grievance involves an immediate threat to an inmate's safety or welfare....  The inmate may [approach any staff member or] elect to present his/her emergency grievance directly to the Officer In Charge.

If the Officer In Charge concurs that the grievance represents an emergency, it will receive immediate attention.

If the Officer In Charge determines the matter is not an emergency, standard procedures will apply.

## C.  <u>Appeal</u>

If the inmate does not accept the decision [addressing] his/her grievance, he/she may appeal it to the Sheriff or Chief Deputy.  After reviewing the

findings, the Sheriff/Chief Deputy may uphold, modify, or reverse [the decision on the grievance]. The Sheriff/Chief Deputy will provide the inmate a written decision. And a copy placed in his facility file.

*Defendants' Exhibit H to the December 22, 2011 Special Report - Doc. No. 19-4* at 2-4.

On January 5, 2012 and February 22, 2012, the court entered orders allowing Wilson the opportunity to respond to the arguments made by the defendants in their special reports. *Doc. No. 23* and *Doc. No. 35*. In response to these orders, Wilson "asserts that he did exhaust administrative procedures" by (i) providing an initial written correspondence alleging the need for a bulletproof vest due to his fear of harm while outside of the facility, (ii) making general statements to jail personnel regarding his fear of inmate Weed and threats of assaults made against him by inmate Weed, (iii) filing a formal grievance with the jail administrator with respect to these perceived threats, and (iv) submitting statements and/or letters to his attorney, the state trial judge and the district attorney regarding his issues with inmate Weed. *Plaintiff's May 5, 2013 response - Doc. No. 45* at 1.[4]

With respect to Wilson's assertion regarding the provision of statements/letters to various individuals involved with his state criminal proceedings, these actions are not within the purview of the jail's grievance procedure. Consequently, the fact that Wilson voiced complaints to his attorney, the district attorney and the trial judge is wholly

---

[4]Although Wilson references other written grievances as a basis for exhaustion, these grievances address issues regarding a bond reduction hearing, his release on bond and his request for placement on trusty status in the jail and, therefore, have no impact on exhaustion of the jail's grievance procedure with respect to the claims presented in the instant complaint. *Defendants' Exhibit G to the December 22, 2011 Special Report - Doc. No. 19-13* at 2-4, 8.

irrelevant in determining whether Wilson properly exhausted the administrative remedy provided to him at the Crenshaw County Detention Facility prior to filing this cause of action.

Wilson's correspondence addressed to Sheriff West/Chief Deputy Lecroy, the formal grievance referencing his fear of harm due to inmate Weed's presence in the jail, and his alleged statements to jail personnel regarding this fear, fail to establish proper exhaustion of the jail's grievance procedure.  After thorough review of the record in this case, it is clear that Wilson did not submit any grievance challenging the alleged assaults about which he now complains as required by the jail's grievance procedure; rather, the evidence before the court demonstrates that Wilson failed to file a formal/written grievance regarding these specific matters.  The only written grievance remotely associated with the issues before this court fails to identify any assaults committed by Weed and White; instead this grievance makes mere general references regarding Wilson's fear of Weed due to purported threats of assaults made by Weed.  *Defendants' Exhibit G to the December 22, 2011 Special Report- - Doc. No. 19-13* at 7; *Plaintiff's Supplemental Response - Doc. No. 45* at 4 (same). This grievance likewise makes no reference to White or any alleged improper actions taken by White.  *Id.*  Thus, this grievance does not address the assaults made the basis of the complaint now before this court.  Moreover, assuming *arguendo* that Wilson voiced informal complaints about these alleged assaults, the record establishes that he did not submit a formal/written grievance challenging any response he received from

16

jail personnel as allowed by the grievance procedure at the Crenshaw County Detention Facility. The court therefore concludes that the claims presented in this cause of action are subject to dismissal. *Ngo*, 548 U.S. at 87-94, 126 S.Ct. at 2384-2388.

In light of the foregoing, the court concludes that Wilson prior to filing this case failed to exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claims. Specifically, Wilson did not file a formal grievance with respect to the claims presented in this cause of action as allowed by the grievance procedure in effect at the Crenshaw County Detention Facility prior to filing this case. Wilson is now incarcerated in the Alabama prison system. Thus, the administrative remedy provided by the defendants for the instant claims is no longer available to Wilson. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Wilson v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits ... properly dismissed with prejudice" where previously available administrative remedies had become unavailable to the inmate).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED to the extent the defendants seek dismissal of this case due to the plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Crenshaw County Detention Facility.

2.  This case be dismissed with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to properly exhaust an administrative remedy provided to him during his confinement in the Crenshaw County Detention Facility as this remedy is no longer available to him with respect to the claims presented in this cause of action.

It is further

ORDERED that on or before February 27, 2014, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).   *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 13th day of February, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE